POWER ELECTRIC COMPANY, demandante y recurrida, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

*Número:* 12908     *Resuelto:* 5 de junio de 1963

*J. B. Fernández Badillo, Procurador General,* y *Juan A. Faría, Procurador General Auxiliar,* abogados del recurrente; *Alberto Picó,* abogado de la recurrida.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

SENTENCIA

Este caso envuelve únicamente una cuestión de hecho. Según surge del récord, la demandante-recurrida introducía, conjuntamente con el equipo de refrigeración que vendía en Puerto Rico, unidades de refrigeración adicionales (motores sellados) que mantenía en sus almacenes para reemplazar aquellas unidades que se dañaran en manos de los clientes durante el plazo de garantía. La demandante pagaba los arbitrios fijados por el Secretario de Hacienda sobre esas unidades adicionales, y tales arbitrios no están en discusión. La unidad dañada y recogida por la demandante era enviada a la fábrica a Estados Unidos donde de ordinario la reparaban y la devolvían reparada. Estas unidades reparadas así devueltas venían a formar parte de las unidades adicionales que mantenía la demandante para el reemplazo a los clientes dentro del período de la garantía. Las unidades devueltas por la fábrica para reemplazo venían facturadas con un precio menor que por lo regular representaba el monto de la reparación. La demandante pagaba sobre estas unidades de reemplazo arbitrios a base de dicho valor menor facturado.

En el año 1954 el Secretario de Hacienda determinó deficiencias a la demandante en el pago de dichos arbitrios por la diferencia entre el valor facturado y el valor mayor determinado por el Secretario para unidades nuevas destinadas al mercado en general. Esas deficiencias cubrieron los años 1951 al 1954.

La Sala sentenciadora concluyó que los arbitrios en discusión se referían a unidades traídas por la demandante para reemplazar las unidades dañadas durante el período de garantía y las cuales la demandante venía obligada a sustituir gratuitamente con una unidad de reemplazo reparada por la fábrica. Entendemos que la evidencia en el récord sostiene sin lugar a dudas su conclusión.

"Demandante:   Estamos de acuerdo en que las unidades son de reemplazo?

Demandada:      Si.

Demandante:     Hay algún otro punto en que estemos de acuerdo?

Demandada:      Propongo que se estipule que ese motor sobre el cual se cobra arbitrio se mandó . . . que ese motor sobre el cual se cobran arbitrios . . . ese motor que vino a reemplazar uno dañado y que ese que se dañó se envió a Estados Unidos. Que llegaron . . . que llegó un motor originalmente con la nevera y el motor se dañó, llegó un motor de reemplazo y el viejo se devolvió. Se estipula eso."

Aparte de las anteriores manifestaciones, el resto de la prueba en el récord demuestra que en efecto, estas unidades se destinaban a reemplazar unidades dañadas durante el período de garantía; el reemplazo se hacía gratuitamente para el cliente, y no fueron destinadas al mercado en general. Quedó igualmente probado que la demandante sufrió el peso del pago de los arbitrios en litigio, y tenía que ser así ya que al cliente no se le cobraba por la unidad reemplazada y, además, porque se trata de una deficiencia en arbitrios determinada en 1954 cubriendo desde el año 1951, siendo por lo tanto improbable, que en 1954, cuando la demandante pagó dicha deficiencia de arbitrios, pudiera pasar la misma en relación con transacciones hechas desde el año 1951.

Se confirma la sentencia dictada por la Sala de San Juan del Tribunal Superior en 4 de abril de 1957 que declaró con lugar la demanda de devolución de arbitrios.

Así lo pronunció y manda el Tribunal y firma el señor Juez Presidente.

(Fdo.)  Luis Negrón Fernández,
*Juez Presidente.*

Certifico:     (Fdo.)  Joaquín Berríos,
                    *Secretario Interino.*